**UNITED STATES STEEL CORPORATION**

v.

**Robert W. FRI et al.**

**Civ. No. 73 H 183.**

United States District Court,
N. D. Indiana,
Hammond Division.

Oct. 1, 1973.

Jay A. Lipe, James T. Harrington, Clifton A. Lake, Chicago, Ill., G. Edward McHie, Hammond, Ind., for plaintiff.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Joseph S. Van Bokkelen, Asst. U. S. Atty., Hammond, Ind., Harvey M. Sheldon, Regional Counsel, U. S. Environmental Protection Agency, Chicago, Ill., for defendants.

## MEMORANDUM

BEAMER, Chief Judge.

In this action for declaratory and injunctive relief, plaintiff seeks judicial review of an order issued by the Administrator of the Environmental Protection Agency on June 22, 1973, pursuant to his authority under the Clean Air Act of 1970, 42 U.S.C. § 1857 et seq. The complaint alleges jurisdiction under 28 U.S.C. §§ 1337, 1331, 2201–2202, and 5 U.S.C. §§ 701–706.

Plaintiff is a Delaware corporation authorized to do business in Indiana and is the largest producer of iron and steel products in the United States. It operates its largest integrated steel mill and other facilities on the shore of Lake Michigan in Gary, Indiana. In the operation of these facilities, plaintiff emits into the atmosphere certain air pollutants as the term is employed in 42 U.S.C. §§ 1857c–3 and 1857c–4.

The order sought to be reviewed was entered pursuant to 42 U.S.C. § 1857c–8(a). It alleges that certain facilities owned and operated by plaintiff at its Gary works and Universal Atlas plants are in violation of the Implementation Plan submitted by Indiana pursuant to 42 U.S.C. § 1857c–5. The order directs plaintiff to implement a planning, maintenance and reporting program for control of emissions of particulate matter from those facilities and sets ultimate dates for compliance with emission requirements.

42 U.S.C. § 1857c–8(a) provides:

> Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Admin-

istrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b).

Subsection a(4) of § 1857c–8 provides that an order, with the exception of one relating to a violation of § 1857c–7, shall not take effect until the person to whom it is issued has had an opportunity to confer with the Administrator concerning the alleged violation.[1] It further provides:

> Any order issued under this subsection shall state with reasonable specificity the nature of the violation, specify a time for compliance which the Administrator determines is reasonable, taking into account the seriousness of the violation and any good faith efforts to comply with applicable requirements.

42 U.S.C. § 1857c–8(b) provides for the filing of a civil action by the Administrator to apply for enforcement of an order issued under Section (a):

> (b) The Administrator may commence a civil action for appropriate relief, including a permanent or temporary injunction, whenever any person—
>
> (1) violates or fails or refuses to comply with any order issued under subsection (a);

§ 1857c–8(c) provides for fines of up to $25,000.00 per day and imprisonment of up to two years for the knowing violation of the Administrator's order.

The Indiana Plan for achieving primary ambient air quality standards set by the Environmental Protection Agency included certain regulations limiting the amounts of emissions from various sources; the Administrator's order charges violation of APC–3, regulating visible emissions from point sources; APC–4R, regulating particulate emissions from fuel combustion sources; and APC–5, regulating emissions from in-

dustrial and manufacturing processes. The Plan also included compliance schedules for various types of sources of various emissions. Pursuant to § 1857c–5(a)(2) the Administrator of the Environmental Protection Agency approved portions of the Plan on May 31, 1972, including emission regulations APC–3, APC–4R and APC–5. The Administrator also approved portions of the Plan outlining general compliance schedules for emissions control, compliance schedules by industry and process, and providing for negotiation of compliance schedules with owners of individual sources. On May 30, 1973, the Air Pollution Control Board of Indiana approved and adopted orders which provide compliance schedules for all facilities at plaintiff's two plants and grant a variance from regulations APC–3, APC–4R, APC–5 and APC–13.

Plaintiff alleges that the Administrator's order is final agency action for which there is no other adequate remedy, and which is subject to judicial review pursuant to 5 U.S.C. §§ 704–706. The general grounds alleged for setting aside the order are that it is arbitrary, an abuse of discretion and unwarranted by the facts in that (1) it does not specify any violation of any applicable compliance schedule established by Indiana and approved by the Administrator under the Act, (2) plaintiff is not in violation of any such schedule, (3) it imposes unreasonable schedules and fails to take into account the seriousness of the violations and good faith efforts to correct them, including plaintiff's efforts before the Indiana Air Pollution Control Board, and (4) the requirements of the order are in language so vague, uncertain and burdensome as to violate due process.

The first ground is in effect an allegation that the Administrator failed to comply with his mandatory duty under the Act to state the violation charged with "reasonable specificity," and the

---

1. On April 18, 1973, a notice of violation was issued by the Agency, and a conference with plaintiff was subsequently held.

third ground in effect alleges that the Administrator failed to comply with his duty of considering the good faith of plaintiff and the seriousness of the violation. The remainder of the charges made by plaintiff are allegations of abuse of the Administrator's discretion under the Act to determine violations, set reasonable compliance schedules and require the establishment and maintenance of records, reports, monitoring equipment and methods and other information that he may reasonably require.

Plaintiff has requested a declaratory judgment setting aside the order, an interlocutory order staying the effect of the order until the Court decides the case upon the merits, and preliminary and permanent injunctions restraining enforcement of the order or action by the Agency seeking to impose penalties or sanctions for violation of the order. Plaintiff alleges in its motion for a stay that irreparable harm will be caused because the order requires plaintiff to make certain irrevocable actions and elections and file certain documents before certain dates or be exposed to the risk of possible penalties before enforcement through criminal action. This would allegedly curtail production and employment at plaintiff's works. Defendants have filed a motion to dismiss the complaint and have counterclaimed for enforcement of the order. The first question is one of jurisdiction.

■■ U.S. Steel argues that the filing of defendants' counterclaim acknowledges jurisdiction to review the order, and makes defendants' motion to dismiss for lack of jurisdiction moot. Jurisdiction clearly exists over the counterclaim under § 1857c–8(b) of the Act. However, although defendants originally argued that plaintiff's contentions were properly raised as a defense to an enforcement action, they now argue that the plaintiff's motion for a stay is not rendered moot by the intervening counterclaim, since the order anticipates continuing activity by plaintiff to meet deadlines and the counterclaim is not yet ripe for decision. The Court agrees with defendants, but finds that an adequate basis for jurisdiction exists over the complaint. Although both parties have ignored the provision, the Court finds that § 1857h–2 of the Act clearly provides jurisdiction. That section in relevant part provides:

(a) Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

. . . (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The District Court shall have jurisdiction, without regard to the amount in controversy or citizenship of the parties, . . . to order the Administrator to perform such act or duty . . .

(b) No action may be commenced . . .

(2) Under subsection (a)(2) of this section prior to 60 days after the plaintiff has given notice of such action to the Administrator, except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of . . . an order issued by the Administrator pursuant to section 1857c–8(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

The manner of notice specified in 40 C. F.R. § 54.2(a) has been satisfied here by service of the complaint.

■■ The Court concludes that jurisdiction is also provided under 28 U.S. C. §§ 1337 and 1331.[2] The scope of re-

---

2. *Cf.* General Motors Corp. v. Volpe, 457 F.2d 922 (3rd Cir. 1972). This jurisdiction-

al finding is not applicable to the complaint insofar as it seeks to state a claim against

view available must be determined by the terms of the Administrative Procedure Act. The Administrative Procedure Act is applicable to all administrative proceedings except to the extent that statutes preclude judicial review or agency action is committed to agency discretion by law. 5 U.S.C. § 701. Although the Clean Air Act does not expressly preclude pre-enforcement review, defendants argue that the Act precludes review by providing a defense to an enforcement action and by omitting any requirement of a record of adjudicatory hearing on which review could be based. *See* Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). However, the Court does not find this "clear and convincing evidence" of an intent to preclude review in light of the broad provisions of § 1857h–2 and the savings clause in § 1857h–2(e).[3] Because of the possibilities of severe economic burdens and risk of fines and imprisonment, the Court should not readily imply a congressional intent to preclude judicial review. *See* St. Regis Paper Co. v. United States, 368 U.S. 208, 227, 82 S.Ct. 289, 7 L.Ed. 2d 240 (1961). However, in the Court's view, § 1857h–2 reveals a clear legislative intent to preclude review of discretionary acts of the Administrator in any pre-enforcement action.

■■ Thus, the finding of jurisdiction to review does *not* apply to plaintiff's complaints regarding the submission of detailed control plans, source performance test results, performance of maintenance practices and compilation of records. These requirements are clearly discretionary with the Administrator under § 1857c–9 of the Act, and thus pre-enforcement review is not authorized by § 1857h–2 or the Administrative Procedure Act.[4] Furthermore, even if jurisdiction to review for abuse of discretion may exist under § 1857c–8(b), the controversy over these requirements is not fit for decision on plaintiff's application because these discretionary requirements involve complicated factual as well as legal issues, are subject to change in the ongoing administrative action, have no immediate legal effect absent an enforcement order to implement them, and do not subject plaintiff to the possibility of criminal or civil penalties for failure to comply since they are ordered pursuant to the Administrator's authority under § 1857c–9 and not under § 1857c–8(a). The penalty provisions of § 1857c–8(c)(2) apply to materials ordered under § 1857c–9 only when they are knowingly falsified. Enforcement of § 1857c–9 orders is available only by injunctive relief under § 1857c–8(b). Every issue raised as to these orders can be raised by plaintiff in defense to the enforcement action. Therefore, defense to the enforcement suit is an adequate remedy, foreclosing

defendants in their individual capacities as plaintiff concedes in its brief. *See* Fed.R. Civ.P. 4(f) ; 28 U.S.C. § 1391(b).

3. The savings clause provides that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)."

The dispute here concerns the legal sufficiency of the requirements of the Administrator's order and his determination that an air quality regulation has been violated, rather than an attack upon the provisions of the Plan or its adoption. *Compare* Getty Oil Co. v. Ruckelshaus, 467 F.2d 349 (3rd

Cir. 1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256.

4. This is clear from the permissive terms of § 1857c–9, its granting of authority to require materials in broad categories rather than specific documents, and the necessary exercise of expert judgment within the special competence of the agency as to the need for the information. *See* Pullman, Inc. v. Volpe, 337 F.Supp. 432 (E.D.Penn.1971). § 1857c–9 provides : " . . . the Administrator may require the owner or operator of any emission source to (A) establish and maintain such records, (B) make such reports, (C) install, use and maintain such monitoring equipment or methods, (D) sample such emissions . . . and (E) provide such other information as he may reasonably require. . . . "

pre-enforcement review. *See Ewing, supra*; 5 U.S.C. § 704.

Plaintiff's contentions that the penalty provisions of the Act could conceivably be found applicable to all of the requirements of the order has little force in light of the clear language of the statute; the particular label placed upon the order by the agency is not necessarily conclusive, for it is the substance of what the agency has purported to do which is decisive. Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 416, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942).

■ On the other hand, certain of the grounds for review alleged by plaintiff are not committed to the Administrator's discretion and are ripe for decision at this time. The complaint alleges that the Administrator failed to comply with his statutory duty to state the alleged violation with "reasonable specificity" and to consider the good faith of the violator and the seriousness of the offense in setting compliance dates which he determines are reasonable. The first issue is a purely legal one concerning the failure of the Administrator to perform a mandatory duty under § 1857c–8(a)(4) of the Act. Although the Administrator is governed by a standard of reasonableness, the terms of the statute are mandatory, require specificity in a charge rather than a broad finding of violation, and the determination of whether the charge is reasonably specific is not one peculiarly suited to administrative expertise since it relates to a comparison of the order to the requirements of the Plan. The second issue is also an alleged failure to comply with a mandatory statutory duty although its resolution depends upon factual rather than purely legal inquiries. The statute specifies the required factors to be considered, and determination of whether the relevant factors were taken into account does not necessitate the exercise of the special competence of the agency which is entailed in weighing the factors themselves.

The finding of a violation by the Administrator is clearly a discretionary one since it is based on "any information available" to the Administrator. Similarly, the setting of a time for compliance is discretionary since it is to be a time which "the Administrator determines is reasonable." Any judicial examination of these determinations would involve extensive testimony regarding the requirements of the Plan and the emission outputs of plaintiff's plants, requiring a detailed understanding of the measurements used for control and the reliability of data upon which a determination of violation was based. Clearly Congress intended these difficult factual inquiries to be handled by the agency charged with formulation and implementation of air quality standards which has the expertise to make knowledgeable decisions. However, in light of the wide latitude which the Administrator is given in determining violations and setting compliance schedules, his mandatory duties to define the violation with "reasonable specificity" and to take into consideration the seriousness of the violation and the good faith of the violator become highly significant. No further administrative proceedings are contemplated with respect to the finding of violation or the setting of compliance dates, aside from an enforcement action; the schedule is effective immediately, and the statute gives it the force of law by providing severe sanctions for its violation.[5] Moreover, the determination reached by the Administrator forces plaintiff to either comply, incur costs and change its affairs or risk prosecution and serious penalties. *See* Abbott Laboratories v. Gardner, 387 U.S. 136, 148–154, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). The Court therefore concludes that with respect to these two issues, the

---

5. Though the amount of the penalty is discretionary with the Court up to a maximum amount, the penalty itself is mandatory. 42 U.S.C. § 1857c–8(c)(1).

action is fit for judicial resolution, and the hardship on the plaintiff favors a finding of "ripeness."

■ The remaining question is the merits of plaintiff's motion for an order staying the effect of the Administrator's order. The irreparable harm alleged by plaintiff is that it is subject to criminal penalties under the order and must make decisions on whether to close facilities or install controls which will allegedly affect production and employment. It is evident that there is a substantial threat of cumulative fines for noncompliance and some economic effect upon compliance.

The record thus far also indicates that plaintiff has a strong likelihood of success on the merits as to at least one of its claims. Plaintiff's arguments on the merits are all based on the general proposition that it has in fact complied with the Plan, and the order of the Administrator is contrary to fact and arbitrary. These contentions, in turn, depend upon specific mandatory duties of the Administrator which plaintiff alleges have been violated under the specific language of § 1857c–8(a)(4). First, plaintiff alleges that the Administrator failed to take into account the seriousness of the violation and the good faith of the violator, particularly in view of plaintiff's negotiations with the Indiana Pollution Board, and a grant of a variance by order of that board on May 30, 1973. These contentions are refuted by the affidavit of the Administrator and the fact that a deferral of the application of the Plan is considered a revision and must be submitted to the Administrator for consideration. The variance granted by the Indiana Board provides no basis for relief for the reasons stated in detail in a lower court decision in the *Getty* case. *See* Getty Oil Co. v. Ruckelshaus, 342 F. Supp. 1006, 1017–1018 (D.Del.1972). Second, plaintiff raises numerous claims regarding the vagueness of the record keeping and reporting requirements of the order. There is no likelihood of success on the merits of these claims because the record keeping requirements, as previously noted, are not subject to review at this stage.

The strongest contention which plaintiff makes is that the Indiana implementation Plan included compliance schedules for types of sources of various emissions, that these schedules were approved by the defendants, and defendants failed to specify in their order a violation of these compliance schedules. Inclusion of compliance schedules in a Plan is required by statute and applicable regulations. 42 U.S.C. § 1857c–5(a)(2)(B); 40 C.F.R. § 51.15(a)(1). Plaintiff's argument is that the failure to specify a violation of a compliance schedule is a violation of the Administrator's duty to state a violation with reasonable specificity and constitutes sufficient ground for setting the order aside. The Administrator argues that these schedules did not grant a variance from the regulations because under the terms of the Plan each steel company had the obligation to submit a compliance schedule for its facilities which would be approved by the state of Indiana and submitted to the Environmental Protection Agency, and the regulations plaintiff is charged with violating under the Plan are enforceable until a revision of the Plan is submitted and approved by the Administrator. Regardless of the merits of the Administrator's position, it is the opinion of the Court that the materials which are now available indicate that plaintiff has a likely chance of success on the merits of this point. Defendants admit in their brief that § 10.1.3 of the Plan set deadlines for final compliance for various sources of emissions in the integrated steel industry. Defendants contend that these were not compliance schedules for the industry, but it is not for the Court to determine at this point whether this contention is valid. Therefore, the Court finds that there is a reasonable likelihood that the omission of a specification of violation of a compliance schedule will be found to violate the Administrator's duty to state with reason-

able specificity the nature of the violation. *See* 40 C.F.R. § 51.15(a)(2).

However, it is equally clear that the irreparable harm with which plaintiff is threatened is not *imminent* enough to justify a stay of the order. The civil and criminal penalties applicable to a violation of the order relate only to the ultimate compliance dates set in the order, as is clear from the terms of the statute. The earliest of these dates is in 1974, and plaintiff is therefore subjected to no imminent danger of accrual of civil and criminal penalties. The only imminent harm to plaintiff resulting from the order is the possible economic harm which preparations for compliance will entail. That these preparations would cause little if any change in the conduct of plaintiff's business is evident from the fact that plaintiff admits in its brief that the State of Indiana has already entered orders establishing schedules for compliance with the Indiana emission regulations which are no later than the compliance dates in the federal order.

In contrast to the lack of imminent harm to plaintiff, a delay of the effectiveness of the order is contrary to the public interest. The purpose of the order is to provide reasonable compliance dates for facilities which the Administrator finds to have particulate emissions in excess of standards designed to meet public health needs. Plaintiff assures the Court that a stay of the order will not preclude plaintiff from meeting ultimate compliance dates if the order is later upheld, but the very argument advanced by plaintiff underscores the lack of irreparable harm to plaintiff by denial of a stay. Moreover, a stay would encourage postponement of preparations by plaintiff for ultimate compliance dates, hinder defendants in their administrative duty of maintaining progress toward compliance with national health standards, discourage the Administrator from utilizing the conference procedure provided in the Act, and delay the resolution of planning problems which the Administrator has the expertise to resolve. This would compromise the objective of Congress to make restoration and maintenance of public health a paramount consideration and thwart the congressional policy to end delay in attainment of national environmental goals. 3 U.S.Code Cong. & Admin.News 5356 (1970); *see also* Note, Enforcement of the Clean Air Amendments of 1970, 48 Notre Dame Law., 921 (1973).

 Plaintiff insists that an order which would require the possible expenditure of millions of dollars, cause lost production and expose plaintiff to the potentiality of criminal fines and imprisonment requires a stay until plaintiff is afforded a due process hearing. It is beyond question that "where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process . . . where it is essential that governmental needs be immediately satisfied." Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (Brandeis, J.) [6] Due process is satisfied by the fact that the burden of proof in enforcement proceedings is on the government. The only order which the Administrator is authorized to make under § 1857c–8(a) is one which requires the violator to comply with the requirements of an applicable plan, a plan which plaintiff had adequate due process opportunity to attack. *See* § 1857h–5. Since any penalties to which plaintiff is subject can only accrue for violation of the Plan or violation of an order under subsection a(1), which possibility cannot occur until 1974, due process is afforded in the defense to the enforcement action which the Administrator has already instituted, and the Court need not decide whether pre-enforcement review of the finding of violation of the Implementation Plan would be required by due process in a case where penalties were immediately applicable for violation of the order.

6. *See also* North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908).

When the possible harm to the administration of the Act and the public interest in attainment of national health standards are balanced against the burden on plaintiff to prepare to meet the dates of compliance, the earliest of which is scheduled for 1974, equity militates against the granting of a stay. As the Court emphasized in *Abbot Laboratories, supra,* 387 U.S. at 156, 87 S.Ct. at 1519:

> It is scarcely to be doubted that a court would refuse to postpone the effective date of an agency action if the Government could show . . . that delay would be detrimental to the public health or safety.

For the reasons stated, the defendants' motion to dismiss will be granted except insofar as the complaint challenges requirements of the order based upon § 1857c–8(a)(4) of the Act, and the plaintiff's motion for a stay will be denied.

A hearing on plaintiff's request for a preliminary injunction setting aside the order and defendants' request for a preliminary injunction enforcing the order will be held at the request of either party and will be set as soon as the demands on the Court's time permit.